Good morning, your honors. May it please the court, my name is Phil Hyde. I represent Ronufo Martinez-Morenos. Would you clarify just one thing right off the bat? He's outside the country, correct? Yeah, he has been removed to Mexico. And before you, following up on that, he's not in custody of anybody in the United States. So how does habeas apply at all? Well, pursuant to his, prior to his removal, he was incarcerated in a jail in Anchorage. And procedurally, we preserved his right to pursue habeas, and he was removed. Is there a case on that? There is a case on it. I don't have it. Did you cite it? It's not in the brief, but it was, it's in the record, and it was cited pursuant to his habeas petition. Well, explain to me how somebody who's not in the custody of the United States has a right to bring habeas. Well, there is a case on point, and Does it make any sense? Well, the reason is that if he were allowed to contest his removal, he would bring a request for asylum to remain in this country because of a reasonable fear of persecution. At the time he originally brought his petition for habeas, he was incarcerated. So he had a choice either to remain in jail in Anchorage or to agree to be removed with the stipulation that if his petition was granted, he would be granted parole to enter this country. Who made that stipulation? The U.S. government. And did they say we're preserving your right to habeas corpus? Yes. Is that in the record? Yes, it is. All right. So, I mean, you know, really at the heart of the case is if his petition was granted, he would then have the opportunity to pursue an asylum claim to which he is entitled. How do you ever get to that? Your immediate problem is an order of deportation that's in effect, and you have no obvious way of challenging that. Well, the basis of his claim is that at the time of his removal, he signed documents that he didn't understand because You have a challenge to the deportation. Right. But how do you have an opportunity to bring those up? You know our own bank case that says your argument seems to be a due process claim. Exactly. And that's excluded by a Morales decision. Not necessarily. Morales is distinguishable because in Morales, a majority decision found that Morales had procedural options available to him that he didn't pursue. In this case, Mr. Martinez Marino had no procedural options available to him because he signed documents that he didn't understand. He didn't have an appeal from those documents. Had he understood his rights When did he sign these documents? When did he sign these documents? 2002. So he's saying there's something unfair about that original proceeding. Right. As I understand, Morales, that's a due process claim. Right. And he can't bring it. You know, I respectfully disagree. Morales, I mean the procedural problem was Morales said he didn't receive notice of a particular proceeding. The court found that he had received the notice. And moreover, the court said, you know, he failed to exercise his right to request that that finding be reopened or reconsidered. They found that he waived, knowingly waived, a procedural right that was available to him. Our position with respect to Mr. Martinez Marino is that he did not make a knowing waiver because he didn't understand what he was doing. He didn't understand the language. Judge Noonan points critically to, or importantly to, Morales Esquerdo. There's one other thing about that en banc decision. It overruled or, as it said, it reversed course from what we said in Areola, Areola. And Areola is very similar to your claim because there in the first immigration proceeding, Mr. Areola had claimed that he had not been provided effective assistance of counsel. And we said in Areola that that due process claim, which is what it was, he had to have a form within which to raise that claim. And we said that he couldn't do it in the reinstatement process because the statute foreclosed that possibility. But we said he had to have a right to bring that claim someplace else. At the time, we said the place to go for that is habeas in the district court. So we sent the case and we transferred the case to district court so he could raise that claim. Along, you know, several years later, along comes Morales. And Morales says, well, you know, this is what we said in Areola. This is what the panel said in Areola. And we're now going to reverse field, I think is what Judge Kaczynski said. So what do you think he was saying by that? Well, I guess I would direct your attention to the dissenting opinion of Morales. Well, no, my question is what do you think Judge Kaczynski was saying? The majority. What did the majority mean by that? Well, I think what they meant was that at least somebody would have an opportunity to bring a habeas petition. You know, if you don't have an automatic right to a hearing, at least you have a habeas petition. And if the Real ID Act. But this is what I'm having trouble with. Because I would like to, you know, I wish I could. Judge Kaczynski had been a little bit clearer. But in Areola, we said he had a right to pursue a habeas relief. And Judge Kaczynski seems to be saying, or the inbound panel seems to be saying, you don't have that right. I don't think Areola said he had a right to a habeas petition. I think they said. We said he had a right to raise that claim. Before. And have a forum within which he could raise that challenge to the original removal proceeding. Right. Or deportation proceeding. Yeah, before. The only place he could do that was in habeas. I couldn't do it. He couldn't do it in the reinstatement process. We Areola says that he couldn't do it in the reinstatement process. And the only place he could do it was in habeas. Do you see the point? What we're concerned is your case is an Areola case. Now, we have an in-bank case which governs us that says Areola doesn't count anymore. And if Areola doesn't count anymore, that there's a shift, then that leaves your claim where Areola, that is, it's no longer the law of the circuit. We're trying to get your feel on what we do with that in-bank because it governs us. Whether we agree with it or not, it's not the issue. The issue is it governs us. Well, you know, I would submit that, you know, what happened with respect to my client was we actually had a habeas hearing scheduled here in Anchorage. The Real ID Act was enacted and resulted in what he was left with was a petition for review to the ninth circuit. His claim is fact-based. His claim is that he didn't understand the language when he stipulated to removal. He has a valid claim for asylum. And a petition for the ninth circuit is no effective relief because it involves a fact-based inquiry. And in the absence of a fact-based inquiry, the statute or the law as, let's say, Morales governs, it effectively violates the suspension clause of the Constitution. So, you know, he needs to have a forum in which he can assert his claim. He didn't understand what he was signing. And, you know, I would submit that with respect, Areola and Morales don't address squarely the habeas petition rights of my client. Well, let me, there's one other, I would, the reason why I was sort of hesitant in the way I described the way Judge Kaczynski wrote this opinion is because at one point he does suggest that while the regulation, meaning the reinstatement regulation does not offend due process, we leave open the possibility that individual petitioners may raise procedural defects in their particular cases. Morales himself raises several such challenges, and to these we now turn. And then he also suggests later on in the opinion that somebody could bring a legitimate challenge after their removal. I think he's talking about habeas. He doesn't say habeas, but I think he's referring to habeas. And if habeas is not effective because of the Real ID Act, which strips jurisdiction of the district court of habeas and converts it to a petition for review, and the circuit court doesn't have the jurisdiction or the ability to hear a fact-based claim, he effectively has no habeas relief. One way to read, had it not been for Judge Kaczynski's sort of reverse field comment or statement in the opinion, one could read Morales as simply saying that the reinstatement process, there's no due process violation to preclude a petitioner from raising a challenge to the underlying deportation or removal proceeding. That is that the reinstatement process does not violate due process. We had suggested in Castro, in a case called Castro, Castro I think it was, I forget the name of it, that the reinstatement process looks like it may violate due process. That point is unequivocally rejected by Morales Esquerdo. They say, clearly you could read it as saying, limiting it to saying that the reinstatement process does not violate due process. You don't have to provide a petitioner with an opportunity to challenge the prior proceeding. But it seems to go on a bit further to say that a petitioner does not have a due process right to challenge in any form the underlying deportation proceeding. And that's the problem. I've been trying to read and understand what Morales Esquerdo did. Well, I mean, you know. If there is still a due process right left to challenge the underlying due process, the underlying removal proceeding, and there's no form, then you've got a suspension clause issue as you've raised. Exactly. And I think you can read Morales more narrowly than that, at least as applied to this case. I think you could swear Morales, majority opinion of Morales, to say that if there is a genuine fact-based habeas claim that only a trial court can handle, then I believe, I mean, that was not the fact situation in Morales. But you could read Morales to say, yes, Mr. Martinez Marino should have a hearing to determine his ability to understand either Spanish or English at the time he signed documents that led to his removal. Under what statute would we be doing that? Under some, what theory would you give an evidentiary hearing on? Well, you know, traditionally habeas has been available for people to challenge the acts of the executive branch where no other form is available to them. He's not asking to review or have the court to second guess the proceedings before a trial, administrative agency, or any other form in which he had a due process right to present his claim. You know, this is, you know, I think the Supreme Court decision in St. Cyr discusses, it's a different statute, but they discuss, you know, traditionally how habeas has worked and how it effectively works. A citizen whose rights are impaired as a result of the acts of the executive branch has the opportunity to go to a district court and seek relief. Now you said earlier that somewhere the government had stipulated to some of this, but where is the, is there some stipulations of what he might have? Excuse me? Earlier, in response to my question, you said there was a stipulation saying that by the government that he might have a right to something or other. Right. Where is that? Frank, I can't point to it in the record, but it was in this courtroom. I just looked at the excerpt of the record. I may have missed it, but where is it? I can't tell you. It's not been an issue that was raised on appeal. You just made the statement ten minutes ago. There's a stipulation. You don't know where it is. Well, I'm sorry, but. Maybe we should hear from the government, and then while we're hearing from the government, you can look through your records or whatever, and if you can find it, you can get back up. I'll give you a few minutes for rebuttal. All right. Thank you. We went way over your time. May it please the Court. My name is Edward Duffy, and I represent the Attorney General in this matter. Your Honor, as we pled in our motion for summary affirmance in this case and our motion to reconsider, it's the government's position that Morales squarely controls this case, and that in light of the holding of Morales, that aliens who are removed from the United States and who reenter without inspection, without seeking permission from the Attorney General to reenter the United States, do not have a right to challenge the previous removal order when they're put in reinstatement proceedings and that order is reinstated. And Morales has, we believe, squarely addressed that issue and held so. In fact, the facts in Morales are remarkably similar to the facts in this case in one respect, in that both aliens in this case, the alien in this case and the alien in Morales, they both say I did not have proper notice and an opportunity to be heard at my hearing. In the Morales case, it was I never received notice of the hearing. That was a due process violation. And in this case, it was while I received notice, I didn't completely understand the notice in the case because it wasn't in the language that I speak best. And therefore, Morales squarely controls the case. And Morales really put in or implemented the Supreme Court's holding in Fernandez-Vargas, which said that the procedure in reinstatement proceedings does not violate due process because it's a summary procedure, because all the elements of due process were satisfied in the original procedure. What if all the elements of due process were not satisfied in the original procedure? There's just no way, is it the government's position? There's just absolutely no way left to challenge, to raise that claim. If the court were to decide. Let me finish that off by saying one thing. The Ombuds opinion doesn't seem to slam the door completely shut. They make this comment at the end about, well, if a petitioner has a legitimate claim and they're removed from the country, they can still pursue it. And I couldn't quite figure out what they meant by that. Well, they can still pursue it like any other alien who is outside the country. How do they pursue it? Well, they'll pursue it, A, through a motion to reopen, if that is possible. I don't believe once you're removed, the regulation does not allow for a motion to reopen. However, while you're still awaiting removal, you may file a motion to reopen or a motion to reconsider under the regulations to the immigration judge. In this case, he could have done it to the immigration judge. Now, he only had five or six days here, Judge, so he didn't have a lot of time to do that. But, in fact, he could have done it. And if you look at the administrative record, the other argument we have besides Morales is that there's not a proper due process claim being made in this case, because there is absolutely no prejudice to be shown by the alien in this matter. He has never alleged in any of his pleadings that he was not removable as charged. None of the pleadings before the IJ in his reinstatement proceeding, in his habeas proceeding, he does not allege that he had a way to be in the United States lawfully. Now, counsel said he was a claim asylum, but he never raised that, did he? He never raised the asylum claim, Your Honor. And, in fact, in the reinstatement proceeding, he has the opportunity to not raise asylum, but to raise a claim of persecution in the reinstatement proceeding. The regulations allow for that, and he's eligible for withholding and removal and for protection on the convention against torture. So he never made it, not only in his original proceeding, which he claims he didn't understand, but also in his reinstatement proceeding when he had a right to raise it. In fact, the regulation speaks specifically to if an alien in a reinstatement proceeding makes any statements that lead the deportation officer or the immigration officer involved to believe that there is a credible, there is a possibility of a credible fear of returning to the country of removal, that officer must then refer that individual to an asylum officer immediately for determination as to whether or not they should get a hearing on the withholding and removal and convention against torture. I'd like to ask you the same question I asked counsel with him. This person is out of the custody of the United States. Is there any basis on which he can say, I do have a right to habeas? Is there any case that would indicate that? I do not have access to a case and cannot remember one where an alien outside the country can, and no longer in the custody of the United States and no longer in the constructive custody of the United States, may file a habeas petition to reenter the country. As I understand the counsel's argument, that's what he's entitled to do, because otherwise there would be a suspension of the habeas corpus clause. I'm aware of no statute or case, Your Honor, that states that an alien outside the country may bring a habeas case. Now, he did have, he has the ability to petition the Attorney General to reenter the United States, and that's a regulation in 212A9. And there's a waiver that he can do that, and if he had a particularly egregious case, he could present that and hope for a waiver to come back in the United States. But this particular individual has no basis to remain in the United States, even if the court were to take jurisdiction and rule that he has, that there was a due process violation. He's outside the country right now. He's never had a valid visa to enter the country. He's never had a valid status. He's never presented himself for inspection. The record's clear on that. Therefore, how does he enter the country even now, even if the case were to be resolved in his favor? That's in a court order. But he has no legal basis to enter the United States, and he never has. I guess the theory is that he was in the country, and if he had an opportunity for a hearing, he could have applied for asylum. He could have applied for asylum. He gets paroled back in somehow or other, and he gets to apply for asylum. I guess that's what the argument is. That would be the only basis. But, again, he has not ever filed an asylum claim when he had the opportunity to do so. Not just asylum, but withholding. He's never claimed persecution at all in the administrative process. The only time he's raised it was in the pleadings in his habeas case, and there's no evidence to support those bare pleadings by counsel in the case. Therefore, they're not evidence in the case. Let me follow up on Judge Noonan's question this way. In the criminal context, I think we say if there are collateral consequences that can be shown, even after a defendant's out of custody, he still has the right to maintain a habeas petition. So are there collateral consequences here to this fellow's removal? In this case, there are no collateral consequences in that because he still can go to the border, present himself, and request withholding of removal. That's allowable under the regulations. He can still do that and present that claim. There's nothing that prevents him from doing that. He does not have to reenter the country to make that claim. Again, though, you point out that the asylum claim is indeed gone because he did enter unlawfully again after he was removed under an order of removal, and Congress has determined that that does away with the possibility of asylum, but they have not taken away the ability to make a claim of persecution should he really have a credible fear if he returns to Mexico that he will be persecuted. Also in the record, Your Honor, there is ample evidence as far as the merits of his due process claim. If you look at page one of the administrative record, the I-213, it's clear that the immigration officers understand what he's saying to them, and they understand him. He told the immigration officers where he entered the United States, what date he entered the United States, and he wanted to be voluntarily removed from the United States. And since he'd already been voluntarily removed, that was no longer an option. So the next best thing was for him to waive his hearing and to get immediately removed from the United States, and that's what he chose to do. The question on the merits of whether he absolutely understood that, at some point in the process, he has a due diligence issue. If he doesn't understand what's being said to him, to say he doesn't understand, he does not claim that he's totally ignorant of Spanish. He claims that he speaks Spanish. And in this case, he was told in Spanish of what the charges were against him, and he was able to communicate with the removal officers as to how he entered the United States and that he wanted to be returned to Mexico as soon as possible, more than likely to get out of custody, which would be a valid reason for that. So based on the court's holding in Morales, the government's position is that there is no right to raise the due process claim here. There's no suspension clause issue implicated, not only because of the Morales decision, but also because of the merits of this case in particular, in that he has not properly laid out a due process claim, and, in fact, he has shown no prejudice at all to his removal from the United States. I just want to clarify, I want to make sure I understand the government's position here. So it's government's view that an alien who's in the reinstatement process, that has suffered a prior removal proceeding, whether or not there was some due process violation, blatant or otherwise, this has, there is no right to pursue any kind of a challenge to that earlier removal. There is no right to pursue that challenge once you reenter unlawfully. Now, there is procedures and there are laws that allow him to file petitions for review in a proper time when they're out of the country, the alien's removed. Now, in the case of this alien, since he waived all that up front, he didn't have that right, but he could have petitioned the Attorney General, and he could still present himself at the border seeking withholding of removal. He still has that option even today. So for foregoing reasons, we believe that the court should affirm the decision of the BIA. Okay, I said even though we went quite a while, we would give you a minute or two for rebuttal, see if you can answer Judge, address Judge Noonan's question. Well, I couldn't find a case that we rely upon that suggests that somebody who is outside the country can nevertheless bring a habeas petition or proceeding. I request leave of court to supplement my response by a letter or supplemental brief because I know it exists. I think the question you were going to answer was where in the record is the stipulation? Well, I didn't see it in my review of the proceedings before Judge Singleton. I believe it's there, and I don't have a transcript of our proceedings, but obviously at the time that we had the habeas hearing scheduled, he was in fact out of the country, and the trial court was prepared to go forward. The point was that according to what you said in your opening argument, that he was granted certain rights to be able to come back in the event he was able to demonstrate certain things, and that seemed to be something we wanted to look at. Counsel has made the assertion to us as an officer of the court there is such a stipulation, so we wanted to review it. I think that's the point. Well, he was granted parole. No, wait a minute. I'm sorry. The question is we want to read it, not have someone talk to us about it. We're at the point now we'd like to read it, and I take it what you're telling us is that you don't know where it is. I can't tell you right now. I know he was the procedure was he would be granted parole to reenter the country. That's different than saying that they were stipulating that he could maintain a habeas proceeding. I don't know why I would have a hearing otherwise. I'd be happy to have you send just a citation of that case. No brief. Just cite the case that you think gives a habeas to somebody in his position outside the country. I might add to that that the copy should go to counsel so that he can respond. Thank you. The matter will be submitted.
judges: Wallace, Noonan, Paez